In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4109

Patrick Navin,

Plaintiff-Appellant,

v.

Park Ridge School District 64,
Fred Schroeder, and Sally Pryor,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 2735--Suzanne B. Conlon, Judge.

Submitted October 16, 2001--Decided November 6, 2001

   Before Bauer, Easterbrook, and Evans,
Circuit Judges.

   Per Curiam.  Patrick Navin, whose son
J.P. Navin is enrolled in Park Ridge
School District, disagrees with the way
the school has addressed J.P.'s dyslexia.
J.P.'s educational plan calls for 500
minutes of tutoring per week. Contending
that the tutoring was being provided by a
crossing guard supervisor with no skill
(or at least no certification) in
educating dyslexic youths, Patrick asked
for a hearing under the Individuals with
Disabilities Education Act, see 20 U.S.C.
sec.1415, and filed this suit when the
hearing officer terminated the proceeding
without addressing the merits. The
district court dismissed the suit, ruling
that non-custodial parents lack standing
under the idea. Patrick is divorced from
Margaret Murnighan, J.P.'s mother, and
the divorce decree gives Margaret custody
of J.P., including the right to make
educational decisions. This means, the
district court held, that Patrick lacks
any legal interest in J.P.'s educational
plan.
   Two preliminary issues require
attention. First, Patrick filed suit not
only for himself but also on behalf of
J.P., acting as J.P.'s next friend. It is
doubtful that a non-custodial parent may
use the next-friend device to seize

control of the child's educational decisionmaking, when a divorce decree has given those choices to the custodial parent. Cf. T.W. v. Brophy, 124 F.3d 893 (7th Cir. 1997). We do not pursue this subject, however, because Patrick did not retain a lawyer. Patrick was free to represent himself, but as a non-lawyer he has no authority to appear as J.P.'s legal representative. See Collinsgru v. Palmyra Board of Education, 161 F.3d 225, 231 (3d Cir. 1998); Wenger v. Canastota Central School District, 146 F.3d 123, 124-26 (2d Cir. 1998); Devine v. Indian River County School Board, 121 F.3d 576, 581-82 (11th Cir. 1997). The notice of appeal is signed only by Patrick and therefore is ineffective to seek review on behalf of J.P.; the district court's dismissal of his claim therefore is conclusive, and the appeal proceeds with Patrick as the only appellant. Second, the defendants contend that the suit must be dismissed because Patrick failed to appeal within the state system. But in 1997 Illinois eliminated the need to pursue two tiers of administrative review, see 105 ILCS 5/14-8.02a(i), so Patrick was free to file his complaint when he did.

If the divorce decree had given Margaret not only custody but also every instrument of influence over J.P.'s education, then the district court's decision would be correct. Although the idea grants rights to "parents," and the regulatory definition of "parent" includes all biological parents, see 34 C.F.R. sec.300.20, which implies that a divorced parent retains statutory rights, nothing in the idea overrides states' allocation of authority as part of a custody determination. See Susan R.M. v. Northeast Independent School District, 818 F.2d 455, 457 (5th Cir. 1987). If the decree had wiped out all of Patrick's parental rights, it would have left him with no claim under the idea. But this is not what the divorce decree does. The district court did not analyze its language, but it is in the record and shows that Patrick retains some important rights, including the opportunity to be informed about and remain involved in the education of his son./* If Patrick and Margaret disagree about educational decisions, then Margaret's view prevails--unless under state law the school district's view prevails over either

parent's wishes, and in that event Patrick's rights under the decree to influence the school's choices are even more important.

Patrick sought the hearing because he believed not only that the school district's plan for J.P.'s education was substandard but also that the school district was not providing all of the educational benefit required by the existing plan. Nothing in the divorce decree strips Patrick of his parental interest in these matters, so the hearing officer erred in dismissing the proceeding solely on account of the divorce, and the district court erred in dismissing the ensuing suit for want of standing.

On remand the district court must decide whether Patrick's claims are incompatible, not with the divorce decree itself, but with Margaret's use of her rights under the decree. Margaret has hired a private tutor to work with J.P. and appears to be content with the results--though she is not a party, and appearances thus may be deceiving. It is not clear whether Margaret hired the tutor because she wants to terminate the school district's control (exercising a right to private education that all parents have, and that Margaret holds to the exclusion of Patrick) or because Margaret, like Patrick, believes that the school district's choice of tutor was inappropriate. If the former, then the parents are at loggerheads and Patrick cannot use the idea to upset choices committed to Margaret by the state court; if the latter, then the parents at least potentially have a mutual interest in changing the school district's plan (or its implementation of the plan) and Patrick's retained interest under the divorce decree comes to the fore. Patrick may have additional interests (such as his demand to see educational records) that are within the scope of his retained rights no matter what choices Margaret makes on J.P.'s behalf. The district court must determine the precise nature of Patrick's claims, evaluate their status under the divorce decree, and proceed to adjudicate those claims that Patrick retains under the decree and that are not trumped by Margaret's use of her own powers under that decree.

Vacated and Remanded

FOOTNOTE

/* Paragraph 7(l) of the decree provides: "Each party has authority to inspect the children's school records and to communicate with teachers, school personnel, and counselors, to discuss the children's standing and progress and to participate in school activities; the parties agree to share equally the tuition and costs incurred in connection with said education."